**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA,

v.

DONWAND CUPPATINO HARMON,

    *Defendant*.

Criminal No. ELH-13-0296

**MEMORANDUM OPINION**

Defendant Donwand Cuppatino Harmon was sentenced on February 7, 2014, to a term of 210 months of incarceration (17.5 years) and five years of supervised release for conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin as well as cocaine base, in violation of 21 U.S.C. § 846. ECF 143. His sentence dates to his arrest on August 23, 2013.

Harmon has filed several motions in an effort to reduce his sentence: A *pro se* "Motion For Sentence Reduction Pursuant to 18, United States Code, Section 3582(c)(1)(A)(i)" (ECF 333); a *pro se* "Motion for Compassionate Release" (ECF 352); and a *pro se* motion to reduce his sentence under Amendment 821 to the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). *See* ECF 354. In addition, on February 27, 2026, the Office of the Federal Public Defender ("FPD") filed a supplement (ECF 377) in support of ECF 333 and ECF 352.[1]

In particular, the FPD asserts "the combination of the following as extraordinary and compelling reasons for relief: (i) the gross disparity between Mr. Harmon's current 210-month sentence and the significantly lower term he likely would receive today in light of his reduced

---

[1] The FPD had previously declined to represent Harmon in regard to earlier compassionate release motions. *See* ECF 336, ECF 357. In ECF 377, the FPD explains that it "has revisited its decision" regarding supplementation of Mr. Harmon's motions. *Id.* at 5.

guideline range, 151-188 months; and (ii) his deteriorating physical state due to damaged nerves in his neck that have caused intense and debilitating pain, limited his mobility, and may result in permanent damage in the absence of corrective surgery on his spine." *Id.* at 5–6.[2] The FPD also submitted exhibits, which include Harmon's Bureau of Prisons ("BOP") Sentence Computation (ECF 377-1); his BOP Inmate Education Data (ECF 377-2); and his BOP Progress Report (ECF 377-3).

I shall refer to Harmon's *pro se* compassionate release motions (ECF 333; ECF 352) and the supplemental memorandum (ECF 377) collectively as the "Compassionate Release Motion" or "Motion."  I shall refer to Harmon's *pro se* motion pursuant to Amendment 821 (ECF 354) as the "821 Motion."

The government opposes both motions.  *See* ECF 363 (opposition to 821 Motion); ECF 380 (opposition to Compassionate Release Motion).  In addition, the government has submitted an exhibit in support of ECF 363.  *See* ECF 363-1.  And, ECF 380 is supported by several exhibits. These include Harmon's disciplinary record (ECF 380-1) and his BOP Medical Records (ECF 382).  Defendant replied.  ECF 386.

Harmon, who was born in December 1976, is now 49 years old.  He has been incarcerated since his arrest on August 23, 2013, and is currently housed at Big Sandy USP.  *See Bureau of Prisons Inmate Locator,* https://www.bop.gov/inmateloc/ (search by BOP Register Number 56894-037) (last accessed May 29, 2026).  Harmon has served about 153 months of his 210-month sentence, *i.e.*, approximately 73%.  He has a projected release date of June 11, 2029.  *Id.*

---

[2] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on a particular submission.

No hearing is necessary to resolve the motions.  Local Rule 105.6.  For the reasons that follow, I shall deny the 821 Motion but grant the Compassionate Release Motion.

### I. Factual and Procedural Background

Harmon was one of six defendants charged in a seven-count indictment on June 11, 2013. ECF 1.  In particular, he was charged in three counts, including Count One, which alleged conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

On December 6, 2013, Harmon entered a plea of guilty to Count One (ECF 108), pursuant to a Plea Agreement.  *See* ECF 109.  The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a sentence ranging from 198 months to 222 months of imprisonment. *Id.* ¶ 7.

The Plea Agreement included a lengthy Statement of Facts.  *Id.* ¶ 6; *see* ECF 109 at 4-7. The Statement of Facts reflects that law enforcement conducted a wiretap investigation and completed a number of controlled purchases of heroin "directly" from defendant, *id.* at 4, and from his coconspirators.  *Id.* at 4-5.  In sum, between August 2012 and August 2013, defendant conspired to distribute more than one kilogram of heroin in Baltimore and Anne Arundel County.

On June 13, 2013, pursuant to a search warrant, law enforcement searched a motel room in Baltimore that had been occupied by defendant and a female.  *Id.* at 6.  From defendant's motel room, the officers recovered $16,000 and 1.7 kilograms of heroin.  *Id.*  In addition, they saw the female dispose of a duffle bag, which they retrieved.  *Id.*  It contained, *inter alia*, a holster and a loaded magazine for a Glock handgun.  *Id.*  The officers engaged in a foot pursuit with the defendant, but he eluded the officers.  *Id.*

Harmon was arrested on August 23, 2013, in Suitland, Maryland.  *Id.*  A search of

3

defendant incident to arrest revealed keys to a location on Sunset Lane in Suitland; $845 in U.S. currency; and a driver's license in the name of Paul Simmons. *Id.* Thereafter, law enforcement obtained a search warrant for the Sunset Lane location. *Id.* It led to the recovery of over $10,000 in U.S. currency and 205.5 grams of cocaine base, found in a kitchen freezer; a 20-ton shop press with kilogram and half-kilogram sized molds with cocaine and heroin residue, found in the dining room, along with over 1,100 grams of heroin; substantial quantities of cocaine and heroin found elsewhere in the residence, along with additional U.S. currency; jewelry; multiple cell phones; false identification; multiple firearms and ammunition; drug tally sheets; and a duffle bag with a false bottom containing almost 4,000 grams of cocaine. *Id.* at 6–7. Notably, law enforcement recovered one Glock Model 33, .357 caliber handgun; a Glock 30, .45 caliber handgun; and a KelTec model PLR-16, 5.56 caliber firearm, as well as substantial quantities of ammunition, including several high capacity magazines. *Id.* at 7.

Count One carried a mandatory minimum term of 10 years' imprisonment, with a maximum of life imprisonment. *Id.* ¶ 3. In exchange for the defendant's plea of guilty to Count One, the government agreed not to file a notice of enhanced penalty under 21 U.S.C. § 851. *Id.* ¶ 9.

Sentencing was held on February 7, 2014. ECF 141. Harmon was 37 years old at the time of his sentencing. ECF 123 (Presentence Report, "PSR"), at 1. He reported that he was taking medication for high blood pressure and for his arthritis. *Id.* ¶ 94. The PSR indicated that defendant had been consuming alcohol and smoking marijuana on a daily basis since the age of twelve. *Id.* ¶¶ 95, 96.

According to the PSR, defendant qualified as a career offender because the instant offense involved a controlled dangerous substance and defendant had multiple prior felony convictions

4

involving controlled substance offenses. *Id.* ¶¶ 36, 60. Thus, defendant had a criminal history category of VI. *Id.* But, even if defendant did not qualify as a career offender, he would have had a criminal history category of VI, based on a total of 26 criminal history points. *Id.* ¶ 59. Of note, defendant had 24 criminal history points, based on prior offenses. *Id.* ¶ 57. But, two additional points were added under U.S.S.G. § 4A1.1(d) because defendant committed the underlying offense while on probation, bringing the total to 26 points. *Id.* ¶¶ 58, 59.

The PSR reflected a final offense level of 34. *Id.* ¶ 38. The offense required a minimum term of ten years of imprisonment, with a maximum of life imprisonment. *Id.* ¶ 75. Based on a final offense level of 34 and a criminal history category of VI, Harmon's Guidelines called for a sentence ranging from 262 months to 327 months of incarceration. *Id.* ¶ 76. However, as noted, the "C Plea" called for a sentence ranging from 198 to 222 months imprisonment. The Court imposed a sentence of 210 months, with credit for time served since August 23, 2013. ECF 143; ECF 347-1 (Computation Data), at 2.

Despite a waiver of appeal in the Plea Agreement, ECF 109, ¶ 16, defendant filed a Notice of Appeal. ECF 145. The Fourth Circuit dismissed the appeal on November 13, 2014. ECF 226; *see* ECF 227, ECF 228.

Harmon has previously filed numerous motions to reduce his sentence. *See* ECF 229 (Dec. 29, 2014); ECF 296 (Nov. 3, 2020); ECF 298 (Nov. 3, 2020); ECF 301 and ECF 303 (Dec. 4, 2020);[3] ECF 333 (June 24, 2024); ECF 352 (June 5, 2025); ECF 354 (June 5, 2025); *see also* ECF 348 (correspondence of Nov. 27, 2024).

By Order of October 2, 2017 (ECF 269), the Court denied ECF 229. In ECF 296, as supplemented by ECF 301 and ECF 303, Harmon moved for compassionate release on the ground

---

[3] ECF 301 and ECF 303 were filed by retained counsel. *See* ECF 299.

that his medical conditions rendered him particularly vulnerable to COVID-19. His motion was premised on his obesity, hypertension, and asthma. By Memorandum Opinion and Order of February 2, 2021 (ECF 314, ECF 315), the Court denied ECF 296, ECF 301, and ECF 303. *See United States v. Harmon*, ELH-13-0296, 2021 WL 351173 (D. Md. Feb. 2, 2021). Notably, the Court found that Harmon had satisfied the "extraordinary and compelling" prong of the § 3582 analysis. *Id.* at *9. Nevertheless, the Court determined that the factors under 18 U.S.C. § 3553(a) counseled against a reduction of Harmon's sentence. *Id.*

As of April 3, 2026, Harmon's disciplinary records at the BOP reflect twelve sanctioned incidents. ECF 380-1. Harmon has incurred sanctions, *inter alia*, for fighting with another person, possessing a hazardous tool, disruptive conduct, indecent exposure, and being insolent to a staff member. *Id.* BOP disciplinary records indicate that Harmon received his first sanction on November 30, 2014 (*id.* at 4), but he has not received a sanction since September 4, 2024. *Id.* at 1.

Additional facts are included, *infra.*

## II. Legal Standards

## A. Amendment 821

Section 3582(c)(2) of 18 U.S.C. permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)", if the amendment has been made retroactively applicable, and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; *see United States v. Williams*, 2026 WL 752605, at *2 (4th Cir. Mar. 17, 2026) (per curiam); *United States v. Barrett*, 133 F.4th 280, 282–83 (4th Cir. 2025); *United States v. Moore*, 2024 WL 2828103, at *1 (4th Cir. June 4, 2024)

6

(per curiam); *United States v. Ali*, ELH-19-0280, 2026 WL 395093, at *3 (D. Md. Feb. 12, 2026); *United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range").

Amendment 821 to the Guidelines went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821. It "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024). "The Sentencing Commission gave retroactive effect to the amended Guideline . . . beginning on February 1, 2024." *Moore*, 2024 WL 2828103, at *1; *see Barrett*, 133 F.4th at 283.

Part A of Amendment 821 pertains to criminal history and so called "status points." *Id.* It amended U.S.S.G. § 4A1.1 "by redesignating subsection (d) as subsection (e) and reducing the additional criminal history points assessed to a defendant who committed his offense while under a criminal justice sentence." *Moore*, 2024 WL 2828103, at *1; *see also Barrett*, 133 F.4th at 282-83. "Criminal justice sentence" under the Guidelines includes probation, parole, supervised release, imprisonment, work release or escape status. U.S.S.G. § 4A1.1(e).

Prior to Amendment 821, two points were added to a defendant's criminal history score if the defendant committed the underlying offense while on parole, probation, or supervised release (previously codified at U.S.S.G. § 4A1.1(d)). But, Amendment 821 limits the assignment of such "status points." *See* U.S.S.G. § 4A1.1(e).

In particular, Amendment 821 permits the assignment of only one status point, and then only if a defendant has seven or more criminal history points. *See* U.S.S.G. § 4A1.1(e). Under

the new provision, U.S.S.G. § 4A1.1(e), only one "status point" may be assessed.  However, under

§ 4A1.1(e), no status points may be added for a defendant who "has six or fewer criminal history

points."  *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug.

12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal

history points.").

Part B provides for a decrease of two offense levels if ten conditions are met.  *See* U.S.S.G.

§ 4C1.1(a).  They are, *id.*:

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;
> **(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> **(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> **(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> **(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

In *Barrett*, 133 F.4th at 288, the Fourth Circuit stated that, as to Amendment 821, a court is

"authorized" under the Sentencing Commission's policy statement § 1B1.10(b)(1) "to consider" the

effect of Amendment 821 on a defendant's criminal history category under § 4A1.1 and offense

level under § 2D1.1(b)(17).

The Fourth Circuit requires the district court to employ a two-step approach in considering §

3582(c)(2) motions. *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016); *United States v.*

*Williams*, 808 F.3d 253, 257 (4th Cir. 2015). "First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Peters*, 843 F.3d at 574 (citations omitted). "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

### B. Compassionate Release

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Davis,* 175 F.4th 475, 480 (4th Cir. 2026); *United States v. Smith*, 2026 WL 509318, at *1 (4th Cir. Feb. 24, 2026) (per curiam); *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

9

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (unreported) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release. . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction,"; "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and the court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *see also Fernandez v. United States,* 608 U.S. __, 146 S. Ct. 1292, 1302 (2026); *United States v. Washington*, 161 F.4th 816, 818 (4th Cir. 2025); *United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025); *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, RAJ-08-230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted

compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, the FSA authorizes a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *McCoy*, 981 F.3d at 275–76. If a defendant has already exhausted administrative remedies upon filing a first motion for compassionate release, the defendant does not need to meet the bar for exhaustion a second time, should the defendant seek to renew the motion. *United States v. King*, 2025 WL 1692747, at *1 (4th Cir. June 17, 2025) (per curiam).

In *Fernandez*, 146 S. Ct. at 1302, the Supreme Court underscored that "Congress made compassionate release available only when 'extraordinary and compelling reasons' justify it." And, said the Court, "That is a demanding standard." *Id.* It reasoned, *id.*: "While Congress has not defined the 'extraordinary and compelling reasons' that may warrant a reduced sentence, these criteria are not empty vessels. 'Extraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent.' 'Compelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" (citations omitted).

11

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.[4]

The first step consists of two parts. The court "must determine: (1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see Williams,* 2026 WL 752605, at *1*; United States v. Boyd*, 2026 WL 595579, at *1 (4th Cir. Mar. 3, 2026) (per curiam); *Smith,* 2026 WL 509318, at *1; *United States v. Johnson*, 2026 WL 237729, at *1 (4th Cir. Jan. 29, 2026) (per curiam); *United States v. Pope*, 2026 WL 207491, at *1 (4th Cir. Jan. 27, 2026) (per curiam); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021). The court's analysis of these two parts goes hand in hand. *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025). If that first step is met, the court then proceeds to the second step.

Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Williams,* 2026 WL 752605, at *1; *Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly,

---

[4] The Fourth Circuit has said that there are two criteria, and that the first criterion consists of two steps. *See*, *e.g.*, *Davis*, 175 F.4th at 480; *Malone*, 57 F.4th at 173. But, in *Crawley*, 140 F.4th at 169, the Fourth Circuit stated that there are three criteria. Whether the criteria are counted as two or three, the substance is the same.

a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see Smith,* 2026 WL 509318, at *2; *Washington*, 161 F.4th at 820; *United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023) (unreported); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

But, the Fourth Circuit has recognized that, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. If there is no applicable policy statement relating to the defendant's compassionate release motion, the court has discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *Burleigh*, 145 F.4th at 548 (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 (4th Cir. 2025) (explaining that, "[i]n the absence of an applicable policy statement, district courts" have the power to "consider *any* extraordinary and compelling reason for release") (cleaned up).

13

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 981 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the *McCoy* Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf , . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A). The court

should apply the Policy Statement that is applicable "at the time the court renders its decision[,]"

not at the time the motion is filed. *Crawley*, 140 F.4th at 170.

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(a) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency. . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of,

15

a correctional officer, § 1B1.13(b)(4)(A), (B); and for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed. . . .", § 1B1.13(b)(6).

In deciding whether a defendant has met the ten-year requirement, district courts can only consider the time a defendant has served in prison and cannot adjust that amount with good-time credits. *Crawley*, 140 F.4th at 172–73. But, under § 1B1.13(b)(5), the district court may consider "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." The capacious language in § 1B1.13(b)(5) underscores that the enumerated circumstances listed in the Policy Statement are not an "exhaustive list" of extraordinary or compelling reasons. *Johnson*, 143 F.4th at 216. For example, in *Johnson*, the Court affirmed a district court's decision to reduce a defendant's sentence based on the disparity between the defendant's sentence and those of his co-conspirators. *Id.* at 215–16. But, in *Fernandez*, 146 S. Ct. at 1302, the Supreme Court made clear that "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release."

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment

16

to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[5]

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant.  It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13(d).  "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.*  And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes extraordinary and compelling reasons for relief, a reduced sentence does not necessarily follow.  The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *See Dillon*, 560 U.S. at 826–27; *Washington*, 161 F.4th at 821; *Brown*, 78 F.4th at 128; *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors

---

[5] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500.  However, the Court acknowledged that "Congress or the Constitution [may] limit[ ] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence. . . ." *Id.* at 486.  "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495.

when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).

Additionally, the court may consider the "'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 145 F.4th at 548 (quoting 18 U.S.C. § 3553(a)(1), (3), (6)). The Fourth Circuit has observed that "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 F.3d at 500). And,

district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see Washington*, 161 F.4th at 821; *United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). In weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). Moreover, the district court's "discretion is not boundless" and "in exceptional case[s]" the district court can abuse this discretion either by neglecting to "adequately explain how it weighed the § 3553(a) factors" or by "failing to recognize that the relevant § 3553(a) factors clearly favor release." *United States v. Smith*, 2025 WL 1864767, at *3, *4 (4th Cir. July 7, 2025) (unreported) (cleaned up) (finding that the district court

19

abused its discretion by failing to acknowledge how the "multiplicity of factors combine to make the case for compassionate release").

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see Washington*, 161 F.4th at 821; *Malone*, 57 F.4th at 170; *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, as stated, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). It is "not difficult" for a district court to satisfy this standard. *Burleigh*, 145 F.4th at 550. However, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see also* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative.  The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6).  *Id.* at 654–55.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range."  *Id.* at 661.  According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison."  *Id.*  The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.* (quoting 18 U.S.C. § 3553(a)(6)).

The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial."  *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).  Nevertheless, in *Burleigh,* 145 F.4th at 550, 551, the Court recognized that, even if a defendant's sentence "would be shorter if issued today," this fact does not "increase the burden on district courts to explain their decision."

### III. Discussion

### A. The 821 Motion

I begin with the 821 Motion, because it is readily resolved.  Pursuant to 18 U.S.C. § 3582(c)(2), Harmon seeks a reduction based on Part A of Amendment 821 to the Guidelines.  ECF 354.

As noted, Amendment 821 amended U.S.S.G. § 4A1.1, so that a defendant who commits an offense while under a criminal justice sentence is now assessed only one criminal history "status point," rather than two.  But, if a defendant has fewer than seven criminal history points, no status

21

point may be assessed.  As noted, the Sentencing Commission made Part A of Amendment 821 retroactive. *See* U.S.S.G. App. C, Amend. 825; U.S.S.G. § 1B1.10(d).

Defendant's prior criminal record yielded a score of 24 criminal history points.  ECF 123, ¶ 57.  And, two points were added because defendant was on probation at the time he committed the offense at issue.  *Id.* ¶ 58.  This increased defendant's criminal history score from 24 points to 26 points.  *Id.* ¶ 59.

The government posits that Harmon is not eligible for relief under Amendment 821, because the amendment "does not have the effect of lowering [his] applicable guideline range." ECF 363 at 5; *see* U.S.S.G. § 1B1.10(a)(2)(B).  I agree.

If defendant were sentenced today, he would be assessed one status point rather than two, under U.S.S.G. § 4A1.1(e).  But, whether defendant has a score of 25 points or 26 points is of no moment.  Either way, his criminal history category is a VI.  Therefore, a change in application of status points would not alter the Guidelines range for Harmon.  *See, e.g., United States v. Gilliam*, JKB-20-0269, 2024 WL 3965589, at *1 (D. Md. Aug. 28, 2024); *United States v. Chapman*, JKB-13-0534, 2024 WL 1485946, at *1 (D. Md. Apr. 5, 2024); *see also Harmon v. United States*, ELH-13-0296, 2025 WL 1284186, at *8 (D. Md. May 2, 2025) (denying relief to Harmon's co-defendant on the same basis).

Accordingly, I shall deny defendant's 821 Motion.

### B. The Compassionate Release Motion

In his Compassionate Release Motion, Harmon advances two principal grounds for relief: The gross disparity between his sentence and the one he would likely receive if sentenced today, and his serious and deteriorating medical condition.  ECF 377.  I address each contention, in turn.

**1.**

Harmon pleaded guilty in 2013 to the crime of conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin, in violation of 21 U.S.C. § 846. ECF 108. Several years later, in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), the Fourth Circuit determined that conspiracy to violate the federal drug laws under 21 U.S.C. § 846 is categorically not a "controlled substance offense" within the meaning of the career offender Guideline, U.S.S.G. § 4B1.1. *Id.* at 237–39. And, the government agrees that, if Harmon were sentenced today, he would no longer qualify as a career offender. ECF 380 at 3.

Amendment 782 is also pertinent. It went into effect on November 1, 2014, and amended the drug weight table in U.S.S.G. § 2D1.1(c). In particular, the Sentencing Commission reduced by two levels the base offense level for certain drug offenses included in U.S.S.G. § 2D1.1. *See United States v. Adams*, JKB-12-0145, 2021 WL 1295013, at *1 (D. Md. Apr. 7, 2021); *see also Hughes v. United States*, 584 U.S. 675 (2018). And, the Commission made Amendment 782 retroactive. *Hughes*, 584 U.S. at 684. Therefore, if defendant were sentenced today, his base offense level would be 30, and not 32, as set forth in the PSR. *See* ECF 123, ¶ 26; *see also* ECF 377 at 8.

The PSR reflects a base offense level of 32, under U.S.S.G. § 2D1.1(a)(5). ECF 123, ¶ 26. Two levels were added under U.S.S.G. § 2D1.1(b)(1) because defendant possessed a dangerous weapon. *Id.* ¶ 27. This brought defendant's offense level to 34. *Id.* ¶ 31. But, defendant's career offender designation increased his offense level from 34 to 37. *Id.* ¶¶ 31, 36, 76. After three deductions for acceptance of responsibility, *id.* ¶ 37, defendant had a final offense level of 34. *Id.* ¶ 38.

23

Defendant was sentenced on February 7, 2014.  ECF 143.  As noted, the Sentencing Commission made Amendment 782 retroactive for persons, such as defendant, who were sentenced prior to November 1, 2014.  But, defendant did not benefit, because his base offense level was determined by his career offender status.  ECF 377 at 8; *see also* ECF 269.  As noted, that career offender designation would not apply if defendant were sentenced today.  In turn, he would be eligible for the two level reduction in offense level under Amendment 782.

If defendant were sentenced today, without the career offender enhancement, and with the benefit of the two-level reduction in the offense level under Amendment 782, along with a two-level enhancement for possession of a weapon and a three-level reduction for acceptance of responsibility, Harmon's final offense level would be 29, not 34.  *See* ECF 123, ¶¶ 26–38; ECF 377 at 8.  Based on 25 criminal history points, his criminal history category would remain at VI.  Harmon's advisory Guidelines range today would be 151 to 188 months, rather than the range of 262 to 327 months that applied at his sentencing.  ECF 377 at 7–8.  I agree with the defense that the resulting difference in the Guidelines range is "dramatic."  ECF 377 at 9.

U.S.S.G. § 1B1.13(b)(6) recognizes as an extraordinary and compelling basis for relief the circumstance in which a defendant "received an unusually long sentence," "has served at least 10 years" of that sentence, and "a change in the law . . . would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  Harmon has served approximately twelve and a half years in prison.  Therefore, he meets the ten-year threshold.  *See Crawley*, 140 F.4th at 172–73 (time served is measured without good-conduct credit).  And, the decision in *Norman*, to the effect that conspiracy to distribute does not constitute a "controlled substance offense" for career offender purposes under the Guidelines, is precisely the sort of change in the law contemplated by the Policy Statement.

24

I am mindful of the Supreme Court's recent admonition in *Fernandez*, 146 S. Ct. at 1302, that "the supposed invalidity of a conviction" is not an extraordinary and compelling reason. But, Harmon does not challenge the validity of his conviction. Instead, he relies on the disparity between the Guidelines that applied at sentencing, which undoubtedly impacted his plea negotiations and his sentence, and the Guidelines that would apply today. *See Moody*, 115 F.4th at 310 (a defendant may not "challenge the validity of a sentence" in a compassionate-release motion, but a court may consider whether a sentence "would be shorter . . . because of changes in law").

The government resists this conclusion principally on the ground that the disparity is not "gross." ECF 380 at 4. It contends that the operative disparity is a mere 22 months, *i.e.*, the difference between Harmon's 210-month sentence and the 188-month top of the revised Guidelines range. It characterizes the disparity as "a fraction" of the disparities that other courts have found extraordinary and compelling. *Id.* (citing, *inter alia, Moody*, 115 F.4th 304, which involved a 98-month disparity). In my view, the government understates the disparity.

The government measures the disparity against the *top* of Harmon's current Guidelines range, even though the original sentence was 52 months *below* the bottom of his then-applicable range. ECF 143 at 2; *see also* ECF 386 at 3. To be sure, the C Plea range (198 months to 222 months) was well below the Guidelines range of 262 months to 327 months. Nevertheless, were the Court to sentence the defendant today, the Court might opt again for a below-Guidelines approach or a sentence near the bottom of the current Guidelines range. ECF 386 at 2–3. And, if the Court were to impose a sentence at the low end of the current range (151 months), the disparity from defendant's 210-month sentence and a sentence of 151 months would be 59 months, not 22 months.

More fundamentally, the bare comparison of Guidelines ranges obscures the reality of Harmon's circumstances. Harmon has served approximately 153 months. ECF 377 at 3.[6] Thus, he has already served a sentence that falls within the current Guidelines range. That circumstance "implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities . . . .'" *Davis*, 99 F.4th at 661 (quoting 18 U.S.C. § 3553(a)(6)).

Courts in this District have repeatedly found a change in a defendant's career offender status to constitute an extraordinary and compelling reason. *See, e.g., United States v. Robinson*, CCB-14-0568, ECF 98 (D. Md. Nov. 6, 2024) (reduction to time served where a change in career offender status reduced Guidelines range from 262–327 months to 188–235 months, a difference the court found "substantial and . . . sufficient to constitute an extraordinary and compelling reason"); *United States v. Ray*, SAG-08-0117, ECF 183 (D. Md. Apr. 11, 2024) (reducing defendant's 240-month sentence to time served after 16 years based on change as to career offender status, which reduced applicable Guidelines range from 272-422 months to 154-171 months, despite defendant's "extremely serious" and "violent" crimes); *United States v. Baldwin*, SAG-08-0117, ECF 197 (D. Md. Sept. 26, 2024) (reducing defendant's 240-month sentence to time served based on change in career offender status, because that change reduced applicable Guidelines range from 272-319 months to 121-130 months); *United States v. Elzey*, JKB-09-0288, ECF 2027 (D. Md. Feb. 2, 2022) (concluding that change to defendant's career offender status, which reduced applicable guideline range from 262-327 months to 121-155 months, constituted "extraordinary and compelling reason" for relief). The disparity between Harmon's prior range and current

---

[6] Harmon represents that, with good conduct credit, he has served the equivalent of a 176-month sentence. ECF 386 at 8. But, he provides no supporting document for this assertion. The BOP Computation Data (ECF 377-1) reflects 322 days of good conduct time earned as of January 23, 2026, with 618 days "earned and projected." *Id*. at 2.

range—262 to 327 months versus 151 to 188 months—is comparable to the disparities found extraordinary and compelling in those cases.

On this record, I conclude that the change in Harmon's career offender status, coupled with his eligibility for the two-point reduction under Amendment 782, constitutes an extraordinary and compelling reason for relief under U.S.S.G. § 1B1.13(b)(6). At a minimum, these changes may be considered by the Court under § 1B1.13(b)(5), and in determining the extent of any reduction under § 1B1.13(c) and 18 U.S.C. § 3553(a)(6).

**2.**

Harmon also contends that his deteriorating medical condition constitutes an extraordinary and compelling reason for relief. ECF 377 at 11–12.[7] The Policy Statement recognizes such a reason where a defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

Notably, Harmon suffers from damaged spinal nerves, which cause radiating pain and limited mobility. ECF 377 at 5. The medical records from the BOP reflect that medical professionals have documented Harmon's need for spinal surgery to address his condition. *See* ECF 376-1; ECF 382; ECF 377 at 11.[8]

---

[7] Neither party has submitted an expert opinion regarding the urgency of the spinal surgery, or to otherwise explain the medical records bearing on that issue.

[8] The medical records were submitted by the government in connection with two filings. The first group, filed with the government's opposition to one of defendant's *pro se* motions for compassionate release (ECF 352), pertains to the period of November 2024 to October 2025. *See* ECF 376-1. The second set, included with the government's opposition to the supplement filed by the FPD (ECF 377), pertains to the period of October 2025 to April 2026. *See* ECF 382.

27

In particular, Harmon's medical records show that on May 6, 2025, he was seen by Dr. Kevin Bayes for his cervical disc disorder and back pain and was prescribed medications to address his pain. ECF 376-1 at 17. The physician's notes from May 6, 2025, state: "The extent and distribution of the muscle wasting is strongly suggestive of compromised cervical spinal nerves." *Id.* Further, the physician wrote that he would "renew [defendant's] bottom bunk pass given extent of his muscle wasting." *Id.* at 18.

Then, on May 29, 2025, Harmon underwent an MRI, which identified the issues with his spine and resulted in a need to "consult neurosurgery." *Id.* at 12. On August 22, 2025, Harmon was seen by a neurosurgeon. ECF 382 at 1. He was diagnosed, *inter alia*, with cervical stenosis, spinal cord compression, cervical myelopathy with atrophy, and cervical radiculopathy. *Id.* In addition, the medical records reflect "severe multilevel cervical spondylosis and stenosis . . . ." *Id.* Harmon was "advised he would need surgery." ECF 376-1 at 9.

In January 2026, Harmon was advised by "neurology" at the University of Kentucky's King's Daughters Medical Center in Ashland "that the BOP needed to 'speed the [surgery] process along' because his spinal condition was worsening and could result in permanent damage." ECF 386 at 7 (quoting ECF 382 at 28).

On March 26, 2026, a neurosurgery report identified Harmon's ongoing issues and recommended "C3-7 laminectomies, C3-T1 instrumentation additional as needed." ECF 382 at 1. Further, the medical records noted: "Discussed with [Clinical Director] and [Health Services Administrator], will schedule target date out to allow scheduling as resources allow. This will likely be a 770 medical transfer to a medical facility." *Id.* at 4. When Harmon was seen by health services on April 2, 2026, the BOP requested additional chest imaging, which it represented was

28

necessary to determine whether a transfer to another facility would be appropriate. *Id.* at 1; *see* ECF 380 at 2–3.

According to Harmon, BOP officials have advised him that whether the necessary "resources" will be made available depends on authorization from the BOP's central office, a process that ordinarily takes between six and eight months to complete. ECF 386 at 6. In the meantime, Harmon represents that he "continues to suffer extreme pain, as well as 'muscle wasting and atrophy.'" *Id.* (quoting ECF 382 at 54). As of April 16, 2026, the date on which the Reply was filed, the spinal surgery had not been scheduled. ECF 386 at 7.

Moreover, Harmon's BOP medical records indicate that he was advised by an orthopedic surgeon in February 2025 that he needs surgery on his left knee. ECF 376-1 at 25 ("Needs arthroscopic surgery an: left knee (medial meniscal tear)."). Although the medical records state that "Consultation previously ordered for arthroscopic left knee surgery and it is approved/pending" (*id.* at 23), as of the date of the filing of the Reply, the knee surgery had not been scheduled. ECF 386 at 7.

The government maintains that Harmon cannot satisfy the requisite standard because the BOP is providing him with care. ECF 380 at 1–3. As the record reflects, the BOP has arranged consultations with specialists and has obtained a neurosurgical recommendation for spinal surgery. ECF 380-1; ECF 380 at 2–3.

But, the relevant inquiry under § 1B1.13(b)(1)(C) is not merely whether some care is being provided; it is whether "the specialized medical care" that the defendant requires "is not being provided" such that the defendant "is at risk of serious deterioration in health." On this record, the documented course of treatment gives the Court pause. Harmon's need for spinal surgery has been recognized since at least August 2025. ECF 382 at 1; ECF 376-1 at 9; ECF 376 at 8. A physician

apparently advised in January 2026 that the BOP should "speed the [surgery] process along" because the defendant's condition is worsening and could result in permanent damage. ECF 382 at 28. Yet, as of April 16, 2026, the surgery had not been scheduled. ECF 386 at 7. Further, the BOP's own notation contemplated scheduling Harmon's surgery "as resources allow." ECF 382 at 2. But, Harmon represents, without dispute, that the scheduling process depends on central-office authorization that typically requires six to eight months. ECF 386 at 6. Meanwhile, Harmon reports continuing severe pain and "muscle wasting and atrophy." ECF 382 at 54. The knee surgery, identified in February 2025, also remains unscheduled. ECF 376 at 8.

Compounding these concerns, Harmon represents that, as of March 25, 2026, he was diagnosed with Stage 3a chronic kidney disease, with kidney function reduced to between 45 and 49 percent of capacity. ECF 382 at 47. According to Harmon, he "recently learned that the medicine prescribed for his spinal condition has likely contributed to kidney failure." ECF 386 at 6.

On this record, the Court does not resolve the disputed question regarding the adequacy of the BOP's medical care. But, the confluence of a documented, worsening spinal condition, for which surgery appears to be medically necessary, as well as the protracted delay in providing that surgery, and a serious and progressive kidney condition, persuade the Court that Harmon's medical circumstances are serious and weigh meaningfully in the analysis.

And, as indicated, in February of 2021, the Court analyzed whether Harmon's medical conditions constituted an extraordinary and compelling reason for release. *Harmon*, 2021 WL 351173, at *8. There, the Court considered Harmon's obesity, hypertension, and asthma, and found that "in light of the COVID-19 pandemic, serious chronic medical conditions, including obesity and hypertension, qualify as compelling reasons for compassionate release." *Id.* at *9.

Although defendant does not raise these medical conditions in the Compassionate Release Motion, the Court notes them for additional context.

To be sure, the Policy Statement makes clear that extraordinary and compelling reasons may be established by circumstances "individually or in combination." U.S.S.G. § 1B1.13(b); *see also id.* § 1B1.13(b)(5) (authorizing consideration of "any . . . combination of circumstances" similar in gravity to those enumerated). Harmon contends that both the changes in the law and his medical conditions constitute extraordinary and compelling reasons. In my view, even if neither ground standing alone is sufficient, their combination is certainly sufficient.

Harmon is serving a sentence that substantially exceeds the current Guidelines, while suffering from serious medical conditions for which timely specialized care has not been forthcoming. Taken together, these circumstances are "most unusual" and "far from common," *Fernandez*, 146 S. Ct. at 1302, and constitute an extraordinary and compelling reason for relief.

Accordingly, Harmon has satisfied the first step of the § 3582(c)(1)(A) analysis. I turn to the § 3553(a) factors.

### C. 18 U.S.C. § 3553(a)

Having found extraordinary and compelling reasons for relief, I must determine whether a reduction is warranted in light of the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent applicable. *Bethea*, 54 F.4th at 831. These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

31

For the reasons that follow, I conclude that those factors support a reduction of Harmon's sentence to time served plus ten days.

The Court does not minimize the seriousness of Harmon's offense or the gravity of his criminal history.  Along with his brothers, Harmon led a substantial drug-trafficking conspiracy involving significant quantities of heroin, cocaine, and cocaine base; he fled from law enforcement; and several firearms were recovered in connection with his arrest, along with substantial quantities of ammunition and money.  ECF 123, ¶¶ 10–22.  At sentencing, I noted that I was "troubled" by the number of guns that had been recovered (ECF 186 at 27), and I observed that Harmon's criminal history score was "one of the worst" I had ever seen.  *Id.* at 23.  Indeed, Harmon's prior record, which includes a conviction for second-degree murder, is serious by any measure. These considerations counseled a lengthy sentence in 2014, and they remain relevant today.

So, too, does Harmon's disciplinary record in the BOP.  As the government emphasizes, Harmon has incurred numerous infractions.  ECF 380 at 5, 7.

In September 2024, shortly before Harmon was transferred to a higher-security facility, he was sanctioned for "fighting with another person."  ECF 380-1 at 1.  In July 2024, he was sanctioned for "possession [of] a hazardous tool," based on an apparent admission that he possessed a cellular telephone.  *Id.*  In August 2023, he was sanctioned for "fighting with another person."  *Id.*  In May 2022, he was found to have "possess[ed] a hazardous tool" (*id.*), and in February 2022, he was sanctioned for "disruptive conduct—greatest".  *Id.* at 2.  His record also includes additional sanctions for "possessing a hazardous tool," one for "fighting with another person," and one for "indecent exposure."  *Id.* at 3–4.

I cannot ignore defendant's disciplinary record while in the BOP. *See* 18 U.S.C. § 3582(c)(1)(A)(ii) (A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community). Indeed, where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *Mangarella*, 57 F.4th at 203; *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n.3. Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture" of a defendant's "'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh the [defendant's] conduct in the years since the[ ] initial sentencing[ ]." *McDonald*, 986 F.3d at 412; *see Martin*, 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).

The Court has considered Harmon's representation that the infractions arose, in part, from his need to respond to dangerous situations in a high-security environment. ECF 386 at 8. Whatever the precise circumstances, the infractions are concerning, and they do not reflect well on Harmon's adjustment. But, as noted, the infractions must be weighed against the full picture that the record now presents, including various other "significant post-sentencing developments." *Mangarella*, 57 F.4th at 203.

The defendant's infractions do not outweigh the considerations favoring relief, particularly given the length of time Harmon has now served. Weighing the § 3553(a) factors as a whole, I am persuaded that the continued incarceration of Harmon exceeds what is "sufficient, but not greater than necessary," to serve the purposes of sentencing. 18 U.S.C. § 3553(a).

In particular, 18 U.S.C. § 3553(a)(2)(A) provides that courts are to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense". And, 18 U.S.C. § 3553(a)(6) requires me to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". Harmon has been incarcerated since August 2013, and has already served about 153 months. That falls within the current Guidelines. And, Harmon represents that, with good-time credit, he has served the equivalent of a 176-month sentence. ECF 386 at 8.

When the Court sentenced Harmon in 2014, it imposed a term that was 52 months below his then-applicable Guidelines range. The Court noted in the Statement of Reasons that Harmon's record, although lengthy, was "primarily drug-related" and that he had "never served a sentence of this length." ECF 144 at 3. Harmon has already served a sentence that comports with current Guidelines, even accounting for his lengthy prior record. To require him to serve substantially longer than the Guidelines now prescribe would produce the kind of unwarranted disparity that § 3553(a)(6) directs courts to avoid.

Moreover, the record reflects meaningful rehabilitation, despite defendant's disciplinary infractions. This, too, should be considered. *See United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district

34

judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, "rehabilitation alone cannot constitute an extraordinary and compelling reason for release." *United States v. Davis*, 2022 WL 127900, at \*1 (4th Cir. Jan. 13, 2022).

To illustrate, Harmon earned his General Equivalency Diploma in August 2014. ECF 377-3 at 2. He has received training towards a commercial driver's license. ECF 229-1 at 4. He has completed numerous courses on subjects including parenting, finance, typing, infectious disease, and meditation. ECF 377-2; ECF 377-3. And, he has completed several drug-treatment programs. ECF 229-1 at 6; ECF 377-3 at 2. Further, he is currently on the waitlist for the BOP's "Challenge" program, an intensive, year-long residential program addressing substance abuse and criminal thinking. ECF 377 at 13–14.[9]

Harmon has also submitted letters from family members, friends, and a community organization, attesting to his rehabilitation and his prospects upon release. ECF 367; ECF 368; ECF 369; ECF 371; ECF 372; ECF 375. Among them, Troy X. Stansbury, the executive director of A Glimpse of Paradise, Inc., a nonprofit that addresses problems facing urban youth, describes Harmon as a "credible messenger of change" and represents that his organization is prepared to have Harmon serve as a mentor in its Big Brother program. ECF 375.

Moreover, Harmon's efforts must be viewed against the backdrop of a difficult history. Harmon was born to a mother suffering from an addiction to drugs, removed from two homes as a child, and addicted to alcohol and drugs by adolescence. ECF 377 at 12–13. He entered the

---

[9] The BOP Progress Report submitted by Harmon (ECF 377-3) indicates that he was removed from the "Challenge" program. According to counsel, that notation resulted from a disciplinary charge that was later expunged, and Harmon anticipates re-enrollment in the next program cycle. *See* ECF 377 at 14 n.2; ECF 377-3 at 3.

federal prison system at age 37, having never received meaningful education, job training, or drug treatment. *Id.*; *see* ECF 123, ¶¶ 41–56, 85, 95–98. The Court does not excuse Harmon's conduct, but § 3553(a)(1) directs consideration of his full "history and characteristics."

As noted, the PSR reflects defendant's abysmal prior record. *See* ECF 123, ¶¶ 41-56. Most of the prior crimes are drug related. And, of import, defendant never received a sentence longer than six years of imprisonment. *Id.* Therefore, he has already served a sentence here that is double the length of any prior sentence. Hopefully, this will foster deterrence from further criminal conduct.

Also of import, the need to provide Harmon with medical care "in the most effective manner," also bears on the analysis. 18 U.S.C. § 3553(a)(2)(D). As discussed, Harmon is in need of spinal surgery and has a serious kidney condition. The protracted delays documented in the record, whatever their cause, counsel in favor of permitting Harmon to obtain timely medical care.

As noted, in February 2021, I denied Harmon's motion for compassionate release. *See* ECF 314, ECF 315. Although I found Harmon eligible for compassionate release, I concluded that the § 3553(a) factors did "not weigh in favor of reducing Harmon's sentence at th[e] time." *See Harmon*, 2021 WL 351173, at *10. In reaching this conclusion, I emphasized the seriousness of Harmon's offense, his prior criminal record, and his "disciplinary infractions throughout his time in prison." *Id.* Moreover, I pointed out that Harmon had "only served about 42% of his sentence." *Id.* That is no longer the case. Harmon has now served more than 70% of his 210-month sentence. And, when that sentence was imposed, the Court believed that defendant qualified as a career offender, and Amendment 782 was not in effect.

Weighing all of the § 3553(a) factors, and giving due weight to the seriousness of Harmon's offense and his BOP disciplinary history, as well as to the substantial portion of the sentence that

defendant has already served, his rehabilitation, his medical circumstances, and the change in defendant's Guidelines, I conclude that a sentence of time served plus ten days is "sufficient, but not greater than necessary," to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a). Therefore, I conclude that a reduction in sentence is warranted at this time.

### IV. Conclusion

For the foregoing reasons, I shall deny the 821 Motion (ECF 354). But, I shall grant the Compassionate Release Motion (ECF 333; ECF 352; ECF 377), and reduce Harmon's term of imprisonment to time served plus ten days, in order to facilitate his appropriate reentry to the community. During the 10-day period, appropriate arrangements shall be made to ensure the defendant's safe release to the community, and to establish an appropriate release plan. The previously imposed term of five years of supervised release shall remain in effect, subject to all previously imposed conditions.

An Order follows, consistent with this Memorandum Opinion.

Date: June 5, 2026

_____/s/_____
Ellen Lipton Hollander
United States District Judge